My associate, Judge Pearson, thinks that the *Page 171 
facts stated in the prisoner's bill of exceptions, do not constitute a case of robbery, but of larceny only. After an examination of all the authorities upon the subject, which I have been able to find, and much reflection upon the principles they seem to establish, I am constrained to say that I do not entirely agree with him. I feel, however, that I ought not to permit my dissent to go so far as to prevent my agreeing that the prisoner shall have a new trial. The absence of the Chief Justice, caused by severe sickness, leaves but two members on the bench, and my refusal to concur in reversing the judgment and having a venire de novo awarded, would have the effect to keep the prisoner in jail six months longer, which I am unwilling to do. Another reason influences me to adopt the course which I am pursuing, which is, that the attention of the Court and counsel were so much taken up on the trial with the main defense of the prisoner, to wit, the alleged defect in the proof of his identity, that the minute circumstances attending the taking of the prosecutor's pocket-book, do not appear to have been brought out with that fullness and particularity, as to make us sure that we have the true character of the transaction before us. That of course can and will be done on the next trial.
I will now content myself with a brief statement of the reasons which incline me to the opinion that, upon the facts and circumstances as they now appear upon the record, the prisoner is guilty of robbery.
All the more recent writers on criminal law concur, with singular unanimity, in defining what is the kind of taking with violence which is necessary to constitute robbery. Sir William Russell says, that "the rule appears to be well-established, that no sudden taking or snatching of property from a person unawares, is sufficient to constitute robbery, unless some injury be done to the person, or there be some previous struggle for the possession of the property, or some force used in order to obtain it." 2 Russ. on Cr. and Mis. 68. In Archbold's C. P. 225, the same language is used. Roscoe's Crim. Ev. 898, (5th Am. from the 3rd Lon. Ed.) says there *Page 172 
must "Some injury be done to the person, or some previous struggling for the possession of the property." Mr. Chitty in his 3rd vol. Crim. Law, 804, has it, that "there must be a struggle, or at least a personal outrage." The language of Mr. East, in his 1 P. Cr. 708, is nearly the same with that of Russell, "That there must be some injury to the person or some previous struggle for the possession of the property." In his notes to 4th vol. Bl. Com. 243, Mr. Chitty says, "To constitute a robbery where an actual violence is relied on, and no putting in fear can be expressly shown, there must be a struggle, or at least a personal outrage." All these able and eminent writers upon the criminal law agree in this, that if there be a struggle for the possession of the property, or a personal outrage, it is robbery, and refer, in support of their position, to the cases, the most, if not all, of which are cited and commented upon in the opinion of my brother PEARSON.
Now, it seems to me, that in the case before us, the testimony of the prosecutor, Brooks, shows something very much like a struggle for the pocket-book before the prisoner succeeded in taking it from the pocket of the prosecutor and running off with it. The distinction between a struggle to escape and one to carry off the property, when the prisoner did both, is in my estimation almost too refined for practical use. I admit that the case of Rex v. Gnosil, tried before Baron GARROW, is an authority against the position that a mere struggle for the possession of the property, is alone sufficient to make out a case of robbery. I have only to say of that case, that it is but the opinion of a single Judge against the whole current of the previous adjudications; and it is a little singular that it does not seem to have been noticed by any of the text writers, whose works have been published since the decision was made. I am not inclined, therefore, to place much reliance upon it.
Having accomplished my purpose of stating shortly the reasons why I do not altogether concur in the opinion of my associate, I conclude with expressing again my willingness, *Page 173 
for the reasons above given, that the prisoner shall have another trial.
 PER CURIAM, Let the judgment be reversed, and this opinion certified, to the end that the prisoner may have a new trial.